THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* TOMÁS ROSARIO FIGUEROA, Defendant and Appellant.

No. 11862. Argued May 5, 1947.—Decided May 29, 1947.

César Andréu Ribas for appellant. Luis Negrón Fernández, Acting Attorney General, and Joaquín Correa Suárez, Assistant Prosecuting Attorney, for appellee.

Mr. Justice De Jesús delivered the opinion of the Court.

The appellant was sentenced to life imprisonment for the crime of murder in the first degree. The only error assigned is that the verdict was contrary to the law and the evidence. ▇ The evidence adduced by the district attorney tended to prove that about midnight on July 13, 1945, several persons, among them the defendant, were present in the bar El Chévere situated in the water front of this city. The cashier ordered everybody to leave because he was going to close the establishment. Many left, but some remained in the premises. Among these was the appellant, who was talking to a woman named Quelín Hernández near the counter of the bar. The deceased, who was then at the door of the establishment, ordered the defendant to quit, and the latter answered that he would not leave until the owner ordered him to do so, that other persons had remained and that he would not go until they all did. The deceased replied that if appellant was tough he was just as tough, and that "he was willing to fight anyone" and challenged him to go outside. The deceased went out first. Appellant followed. However, they did not fight because other persons intervened. After having avoided the quarrel, the deceased told appellant that they would meet again that night or the following day at El Chévere. They were about ten or fifteen feet apart. Appellant then walked towards the deceased, who was not in a quarrelsome attitude, for he had his arms extended downwards, and stabbed him in the chest cutting his mammary

artery. Defendant assaulted him with such violence that the witness testified that the stab made the same noise as when stricking something hollow. Judging from the attitude of the deceased, the latter must have been distracted at the time that he was stabbed, for notwithstanding the altercation that had taken place and that appellant had to walk ten or fifteen feet towards his victim, the latter did not make the slightest movement in his defense. Upon receiving the wound he put his hand on his chest, turned, and walked several steps until he found where to sit down. He then lowered his head and bled through his month and nose, dying shortly thereafter.

Appellant admits that the facts happened as revealed by the evidence for the prosecution, with the exception that, as he said, he was forced to assault in self-defense, when he noticed that the deceased made a gesture as if to strike him with a weapon. However, it was conclusively proved that the deceased was not carrying any weapon and the jury did not believe that he had made any such gesture.

As to the plea of self-defense, the record shows that the evidence was conflicting and the jury did not believe appellant's testimony.

Disregarding the theory of self-defense, we have only to decide if according to the evidence, appellant should have been convicted of voluntary manslaughter. The court a quo gave clear and correct instructions as to voluntary manslaughter and as to murder in both degrees. There is no need of considering them in detail because appellant does not contest them. In the present case if the fight had taken place when they left the establishment by virtue of the challenge that the deceased made, and the latter's death had been the result of the struggle, the offense committed would have been voluntary manslaughter, for his death would have been the result of a heat of passion. But when his death occurred, appellant and the deceased were not fighting, only

an altercation had taken place which was caused by the order given by the deceased. We may presume that, since the jury did not bring a verdict of voluntary manslaughter, it believed that the altercation prior to the killing was not sufficient to produce the heat of passion that would have reduced the murder to voluntary manslaughter, or that at the time of inflicting the fatal wound, sufficient time had elapsed for the defendant to cool down. Since the crime committed by the defendant was not voluntary manslaughter, it must be murder.

Section 199 of the Penal Code, defines murder as the "unlawful killing of a human being, with malice aforethought." Section 201 of the same Code provides for both degrees of murder and provides that it is in the first degree: (a) when perpetrated by means of poison, lying in wait, or torture; (b) any other kind of willful, deliberate, and premeditated killing; and (c) any killing which is committed in the perpetration or attempt to perpetrate arson, rape, robbery, burglary or mayhem, and that all other kinds of murders not included above are in the second degree.

■ Pursuant to § 201, to constitute murder in the first degree the killing must be premeditated and deliberate, except when done in perpetration of certain felonies stated in said Section. In other words, the unlawful killing must be intentional, willful, and premeditated. Deliberation is the resolution or decision to kill after giving it some consideration for said deliberation to take place. This space of time, according to the authorities, may be as rapid as mental action.

■ It was the province of the jury to determine whether the crime was murder in the first or in the second degree. Naturally, its decision cannot be arbitrary. It must be guided by the statutory provisions and its decision should be supported by the evidence, giving always to the defendant

the benefit of reasonable doubt, if any, as to the degree of the offense, in which case it shall find him guilty of murder in the second degree.

Applying this principle to the facts in the present case, we must determine whether the evidence is sufficient to support the verdict of murder in the first degree. As stated in *People* v. *Howard*, 295 P. 333, 336 (Cal. 1930):

"To be murder of the first degree . . . the killing must be premeditated, except when done in the perpetration of certain felonies; that is to say, the unlawful killing must be accompanied with a deliberate and clear intent to take life."

It seems unnecessary to add that deliberation being a subjective act, it cannot be proved by direct evidence. One must go to the facts of the case in order to determine whether deliberation or premeditation may be rationally inferred therefrom. The record reveals that the deceased provoked the quarrel by ordering the defendant to leave the bar, without it appearing from the evidence that he had any authority to give such an order and that later he challenged him to fight when the latter refused to obey him. After the conflict had been avoided, the deceased again provoked appellant by telling him that he would meet him that night or the following day at El Chévere. But between this last provocation and his death a period of time elapsed the length of which is not revealed by the record. In any event appellant had to walk ten or fifteen feet in order to reach the victim and however brief the space of time was, it could have been sufficient to make the decision or resolution to kill. The fact that the victim had offended appellant is not decisive as to the classification of the offense. As a general rule, murder is committed to revenge a more or less serious offense. It all depends that the facts proved justify the jury to conclude that the mind of the defendant, upon committing the act, was in a condition to deliberate and premeditate.

In *State* v. *Ogilvie*, 175 P.2(d) 454, 458, (Ore. 1946), citing *State* v. *Morey*, 35 Pac. 655, 36 Pac. 573, it was said:

". . . As the power to deliberate or premeditate is possessed only by those having a mind free from passion or excitement, it cannot be said, as a matter of law, that any given space of time would afford an opportunity to a given person for deliberation and premeditation, if there is any question as to whether his mind was so disqualified or disturbed. In such case, the question as to whether there had been sufficient cooling time, and whether the mind was in a condition to deliberate and premeditate, would be for the jury to determine, and not the court."

In the case at bar the question was submitted to the jury who decided it adversely to the appellant. And since the verdict finds support in the evidence, this Court cannot substitute its view for that of the jury.

Judgment below is affirmed.